

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
Chicago Regional Office
175 W. Jackson, Suite 1450
Chicago, IL 60604

**DIVISION OF ENFORCEMENT**

Jake Schmidt
Senior Counsel
(312) 886-3284
schmidtj@sec.gov

August 3, 2017

<u>VIA OVERNIGHT DELIVERY</u>
American Bondholders Foundation, LLC
c/o National Registered Agents, Inc.
160 Greentree Dr., Suite 101
Dover, DE 19904

Re: <u>In the Matter of American Bondholders Foundation, LLC, C-8388</u>

To Whom It May Concern:

The staff of the United States Securities and Exchange Commission is conducting an investigation in the matter identified above. The enclosed subpoena has been issued to American Bondholders Foundation, LLC ("ABF") as part of this investigation. The subpoena requires ABF to provide us with documents.

Please read the subpoena and this letter carefully. This letter answers some questions you may have about the subpoena. You should also read the enclosed SEC Form 1662. If ABF does not comply with this subpoena, the SEC may bring an action in Federal Court to enforce this subpoena. Failure to comply with a court order enforcing this subpoena may result in the court imposing a fine, imprisonment or both.

**<u>Producing Documents</u>**

*What materials do I have to produce?*

The subpoena requires ABF to provide us the documents described in the attachment to the subpoena. **ABF must provide these documents by September 5, 2017.** The attachment to the subpoena defines some terms (such as "document") before listing what you must provide.

ABF should produce each and every document in its possession, custody, or control, including any documents that are not in its immediate possession but that it has the ability to obtain. All responsive documents shall be produced as they are kept in the usual course of business, and shall be organized and labeled to correspond with the numbered paragraphs in the subpoena attachment. In that regard, documents should be produced in a unitized manner, *i.e.*, delineated with staples or paper clips to identify the document boundaries.

Documents responsive to this subpoena may be in electronic or paper form. Electronic documents such as email should be produced in accordance with the attached document entitled SEC Data Delivery Standards (the "Standards"). If you have any questions concerning the production of documents in an electronic format, please contact me as soon as possible but in any event before producing documents. **All electronic documents responsive to the document subpoena, including all metadata, must also be secured and retained in their native software format and stored in a safe place.** The staff may later request or require that you produce the native format.

For documents in paper format, you may send the originals, or, if you prefer, you may send copies of the originals. The Commission cannot reimburse you for the copying costs. If you are sending copies, the staff requests that you scan (rather than photocopy) hard copy documents and produce them in an electronic format consistent with the Standards. Alternatively, you may send us photocopies of the documents in paper format. **If you choose to send copies, you <u>must</u> secure and retain the originals and store them in a safe place.** The staff may later request or require that you produce the originals.

Whether you scan or photocopy documents, the copies must be identical to the originals, including even faint marks or print. Also, please note that if copies of a document differ in any way, they are considered separate documents and you must send each one. For example, if you have two copies of the same letter, but only one of them has handwritten notes on it, you must send both the clean copy and the one with notes.

If you <u>do</u> send us scanned or photocopied documents, please put an identifying notation on each page of each document to indicate that you produced it, and number the pages of all the documents submitted. (For example, if Jane Doe sends documents to the staff, she may number the pages JD-1, JD-2, JD-3, etc., in a blank corner of the documents.) Please make sure the notation and number do not conceal any writing or marking on the document. If you send us originals, please do not add any identifying notations.

In producing a photocopy of an original document that contains post-it(s), notation flag(s), or other removable markings or attachments which may conceal all or a portion of the markings contained in the original document, photocopies of the original document both with and without the relevant post-it(s), notation flag(s), or removable markings or attachments should be produced.

*Do I need to send anything else?*

You should enclose a list briefly describing each item you send. The list should state to which numbered paragraph(s) in the subpoena attachment each item responds. A copy of the subpoena should be included with the documents that are produced.

Passwords for documents, files, compressed archives, and encrypted media should be provided separately either via email addressed to ENF-CPU@sec.gov, or in a separate cover letter mailed separately from the data.

2

Please include a cover letter stating whether you believe you have met your obligations under the subpoena by searching carefully and thoroughly for everything called for by the subpoena, and sending it all to us.

Please also provide a narrative description describing what you did to identify and collect documents responsive to the subpoena. At a minimum, the narrative should describe:

- who searched for documents;
- who reviewed documents found to determine whether they were responsive;
- what sources were searched (e.g., computer files, CDs, DVDs, thumb drives, flash drives, online storage media, hard copy files, diaries, datebooks, planners, filing cabinets, home office, work office, voice mails, home email, webmail, work email, backup tapes or other media);
- what third parties, if any, were contacted to obtain responsive documents (e.g., phone companies for phone records, brokerage firms for brokerage records); and
- where the original electronic and hardcopy documents are maintained and by whom.

For any documents that qualify as records of regularly conducted activities under Federal Rule of Evidence 902(11), please complete a business records certification (a sample of which is enclosed) and return it with the document production.

*What if I do not send everything described in the attachment to the subpoena?*

The subpoena requires ABF to send <u>all</u> the materials described in it. If, for any reason – including a claim of attorney-client privilege – ABF does not produce something called for by the subpoena, you should submit a list of what ABF is not producing. The list should describe each item separately, noting:

- its author(s);
- its date;
- its subject matter;
- the name of the person who has the item now, or the last person known to have it;
- the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents;
- the reason you did not produce the item; and
- the specific request in the subpoena to which the document relates.

If ABF withholds anything on the basis of a claim of attorney-client privilege or attorney work product protection, you should identify the attorney and client involved. If ABF withholds anything on the basis of the work product doctrine, you should also identify the litigation in anticipation of which the document was prepared.

If documents responsive to this subpoena no longer exist because they have been lost, discarded, or otherwise destroyed, you should identify such documents and give the date on which they were lost, discarded or destroyed.

*Where should I send the materials?*

Please send the materials to:

> ENF-CPU
> U.S. Securities and Exchange Commission
> 100 F St., N.E., Mailstop 5973
> Washington, DC 20549-5973

For smaller electronic productions under 10MB in size, the materials may be emailed to the following email address: ENF-CPU@sec.gov.

Please also provide a duplicate copy of any document production cover letters to Jake Schmidt at schmidtj@sec.gov. Additionally, please include the SEC matter number and the name of the requesting attorney when responding.

## Other Important Information

*May I have a lawyer help me respond to the subpoena?*

Yes. ABF has the right to consult with and be represented by its own lawyer in this matter. We cannot give you legal advice.

*What will the Commission do with the materials I send and/or the testimony I provide?*

The enclosed SEC Form 1662 explains how we may use the information you provide to the Commission. This form also has other important information for you. Please read it carefully.

*Has the Commission determined that anyone has done anything wrong?*

This investigation is a non-public, fact-finding inquiry. We are trying to determine whether there have been any violations of the federal securities laws. The investigation does not mean that we have concluded that anyone has violated the law. Also, the investigation does not mean that we have a negative opinion of any person, entity or security.

*Important Policy Concerning Settlements*

Please note that, in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

*I have read this letter, the subpoena, and the SEC Form 1662, but I still have questions. What should I do?*

If you have any other questions, you may call me at (312) 886-3284. If you are represented by a lawyer, you should have your lawyer contact me.

Sincerely,

/s *Jake Schmidt*

JAKE SCHMIDT
Senior Counsel
Division of Enforcement


Enclosures:      Subpoena and Attachment
                  SEC Data Delivery Standards
                  SEC Form 1662
                  Background Questionnaire
                  Business Records Certification


cc (with enclosures): Jonna Bianco, 2840 Glasscock Road, Lewisburg, TN 37091-6121



**SUBPOENA**

# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION

**In the Matter of American Bondholders Foundation, LLC, C-8388**

**To:** American Bondholders Foundation, LLC
c/o National Registered Agents, Inc.
160 Greentree Dr., Suite 101
Dover, DE 19904

---

☒ **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission, at the place, date and time specified below:

ENF-CPU, U.S. Securities and Exchange Commission, 100 F St., N.E., Mailstop 5973, Washington, DC 20549-5973, no later than September 5, 2017 at 4:00 p.m.

---

☐ **YOU MUST TESTIFY** before officers of the Securities and Exchange Commission, at the place, date and time specified below:

---

**FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA**.
If you do not comply with this subpoena, the SEC may bring an action in Federal Court to enforce this subpoena.
Failure to comply with a court order enforcing this subpoena may result in the court imposing a fine, imprisonment, or both.

---

By: /s *Jake Schmidt*      Date: August 3, 2017
Jake Schmidt, Staff Accountant
U.S. Securities and Exchange Commission
Chicago Regional Office
175 W. Jackson, Suite 1450
Chicago, IL 60604

I am an officer of the U.S. Securities and Exchange Commission authorized to issue subpoenas in this matter. The Securities and Exchange Commission has issued a formal order authorizing this investigation under Section 20(a) of the Securities Act of 1933 and Section 21(a) of the Securities Exchange Act of 1934.

---

NOTICE TO WITNESS: If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

**SUBPOENA ATTACHMENT FOR AMERICAN BONDHOLDERS FOUNDATION, LLC**
<u>In the Matter of American Bondholders Foundation, LLC, C-8388</u>

August 3, 2017

**<u>Definitions</u>**

As used in this subpoena, the words and phrases listed below shall have the following meanings:

1.   American Bondholders Foundation, LLC means the entity doing business under the name American Bondholders Foundation, LLC and/or ABF, including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

2.   ABF Advisory, LLC means the entity doing business under the name ABF Advisory, LLC and/or ABF Advisory, including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

3.   ABF Charities means the entity doing business under the name ABF Charities, including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

4.   ABF-West Opex means the entity doing business under the name ABF-West Opex, including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

5.   "Chinese Bond" means bonds issued by China (including, but not limited to, the Republic of China) between 1900 and 1949.

6.   "Person" means a natural person, firm, association, organization, partnership, business, trust, corporation, bank or any other private or public entity.

7.   A "Representative" of a Person means any present or former family members, officers, executives, partners, joint-venturers, directors, trustees, employees, consultants, accountants, attorneys, agents, or any other representative acting or purporting to act on behalf of the Person.

8.   "Jonna Bianco" means (i) Jonna Bianco, and/or (ii) any present or former representative of Jonna Bianco.

9.     "Document" shall include, but is not limited to, any written, printed, or typed matter including, but not limited to all drafts and copies bearing notations or marks not found in the original, letters and correspondence, interoffice communications, slips, tickets, records, worksheets, financial records, accounting documents, bookkeeping documents, memoranda, reports, manuals, telephone logs, facsimiles, messages of any type, telephone messages, text messages, voice mails, tape recordings, notices, instructions, minutes, summaries, notes of meetings, file folder markings, and any other organizational indicia, purchase orders, information recorded by photographic process, including microfilm and microfiche, computer printouts, spreadsheets, and other electronically stored information, including but not limited to writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations that are stored in any medium from which information can be retrieved, obtained, manipulated, or translated.

10.    "Communication" means any correspondence, contact, discussion, e-mail, instant message, or any other kind of oral or written exchange or transmission of information (in the form of facts, ideas, inquiries, or otherwise) and any response thereto between two or more Persons or entities, including, without limitation, all telephone conversations, face-to-face meetings or conversations, internal or external discussions, or exchanges of a Document or Documents.

11.    "Concerning" means directly or indirectly, in whole or in part, describing, constituting, evidencing, recording, evaluating, substantiating, concerning, referring to, alluding to, in connection with, commenting on, relating to, regarding, discussing, showing, describing, analyzing or reflecting.

12.    An "Agreement" means any actual or contemplated (i) written or oral Agreement; (ii) term or provision of such Agreement; or (iii) amendment of any nature or termination of such Agreement. A request for any Agreement among or between specified parties includes a request for all Documents Concerning (i) any actual or contemplated Agreement among or between such parties, whether or not such Agreement included any other Person; (ii) the drafting or negotiation of any such Agreement; (iii) any actual or contemplated demand, request or application for any such Agreement, and any response thereto; and (iv) any actual or contemplated objection or refusal to enter into any such Agreement, and any response thereto.

13.    The term "Reviewed" means examined, assessed, considered, analyzed or evaluated.

14.    The term "you" and "your" means the Person to whom or entity to which this subpoena was issued.

15.    To the extent necessary to bring within the scope of this this subpoena any information or
       Documents that might otherwise be construed to be outside its scope:
       a.    the word "or" means "and/or";
       b.    the word "and" means "and/or";
       c.    the functional words "each," "every" "any" and "all" shall each be deemed to
             include each of the other functional words;
       d.    the masculine gender includes the female gender and the female gender includes
             the masculine gender; and
       e.    the singular includes the plural and the plural includes the singular.

16.    "Relevant Period" means the time period beginning January 1, 2013, and continuing to
       the present, unless otherwise specified.

## Instructions

1.    Unless otherwise specified, this subpoena calls for production of the original Documents
      and all copies and drafts of same. Documents responsive to this subpoena may be in
      electronic or paper form. Electronic Documents such as email should be produced in
      accordance with the attached Document entitled SEC Data Delivery Standards. All
      responsive electronic Documents, including all metadata, should also be produced in their
      native software format.

2.    For Documents in paper format, you may send the originals, or, if you prefer, you may
      send copies of the originals. The Commission cannot reimburse you for the copying
      costs. If you are sending copies, the staff requests that you scan (rather than photocopy)
      hard copy Documents and produce them in an electronic format consistent with the SEC
      Data Delivery Standards. Alternatively, you may send us photocopies of the Documents
      in paper format. If you choose to send copies, you <u>must</u> secure and retain the originals
      and store them in a safe place. The staff may later request or require that you produce the
      originals.

3.    Whether you scan or photocopy Documents, the copies must be identical to the originals,
      including even faint marks or print. Also, please note that if copies of a Document differ
      in any way, they are considered separate Documents and you must send each one. For
      example, if you have two copies of the same letter, but only one of them has handwritten
      notes on it, you must send both the clean copy and the one with notes.

4.    In producing a photocopy of an original Document that contains post-it(s), notation
      flag(s), or other removable markings or attachments which may conceal all or a portion
      of the markings contained in the original Document, photocopies of the original
      Document both with and without the relevant post-it(s), notation flag(s), or removable
      markings or attachments should be produced.

5.    Documents should be produced as they are kept in the ordinary course of business or be organized and labeled to correspond with the categories in this request. In that regard, Documents should be produced in a unitized manner, i.e., delineated with staples or paper clips to identify the Document boundaries.

6.    Documents should be labeled with sequential numbering (bates-stamped).

7.    You must produce all Documents created during, or Concerning, the period from January 1, 2013 to the date of this subpoena, unless otherwise specified.

8.    The scope of any given request should not be limited or narrowed based on the fact that it calls for Documents that are responsive to another request.

9.    You are not required to produce exact duplicates of any Documents that have been previously produced to the Securities and Exchange Commission staff in connection with this matter. If you are not producing Documents based upon a prior production, please identify the responsive Documents that were previously produced.

10.   For any Documents that qualify as records of regularly conducted activities under Federal Rule of Evidence 902(11), please complete a business records certification (a sample of which is enclosed) and return it with the Document production.

11.   This subpoena covers all Documents in or subject to your possession, custody or control, including all Documents that are not in your immediate possession but that you have the effective ability to obtain, that are responsive, in whole or in part, to any of the individual requests set forth below. If, for any reason – including a claim of attorney-client privilege – you do not produce something called for by the request, you should submit a list of what you are not producing. The list should describe each item separately, noting:

   a.    its author(s);
   b.    its date;
   c.    its subject matter;
   d.    the name of the Person who has the item now, or the last Person known to have it;
   e.    the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents;
   f.    the basis upon which you are not producing the responsive Document;
   g.    the specific request in the subpoena to which the Document relates;
   h.    the attorney(s) and the client(s) involved; and
   i.    in the case of the work product doctrine, the litigation for which the Document was prepared in anticipation.

12.   If Documents responsive to this subpoena no longer exist because they have been lost, discarded, or otherwise destroyed, you should identify such Documents and give the date on which they were lost, discarded or destroyed.

## **Documents to be Produced**

1.      Produce Documents sufficient to identify all entities with which ABF is or has been associated with since January 1, 2013 that have solicited or received investments, loans, or other deposits from third parties (including, but not limited to, the sale, purchase, transfer and/or deposit of Chinese Bonds). This request is limited to those entities for which you are or were an owner, partner, member, executive, manager, employee or a Representative of any kind. In lieu of producing documents, you may provide this information in the following format:

| Entity Name | Entity Mailing Address | Entity Phone Number | Entity E-Mail Address | Entity Website Address |
|---|---|---|---|---|
| | | | | |
| | | | | |

2.      For each investor, depositor, client and/or creditor of:

     a.   American Bondholders Foundation, LLC;

     b.   ABF Advisory, LLC;

     c.   ABF Charities;

     d.   ABF-West Opex; and

     e.   Any other entity identified in response to Request #1

Produce Documents sufficient to provide the following information: (i) name of investor/depositor/client/creditor; (ii) amount loaned/invested/ deposited; (ii) date of loan/investment/deposit; and (iii) number of Chinese Bonds held by or deposited with the entity (if applicable). In lieu of producing documents, you may provide this information in the following format:

**American Bondholders Foundation, LLC**

| Name | Amount | Date | Number of Bonds (if applicable) |
|---|---|---|---|
| | | | |
| | | | |

5

**ABF Advisory, LLC**

| Name | Amount | Date | Number of Bonds (if applicable) |
|------|--------|------|-------------------------------|
|      |        |      |                               |
|      |        |      |                               |

**ABF Charities**

| Name | Amount | Date | Number of Bonds (if applicable) |
|------|--------|------|-------------------------------|
|      |        |      |                               |
|      |        |      |                               |

**ABF-West Opex**

| Name | Amount | Date | Number of Bonds (if applicable) |
|------|--------|------|-------------------------------|
|      |        |      |                               |
|      |        |      |                               |

**[Repeat for Additional Entities Responsive to Request #2]**

| Name | Amount | Date | Number of Bonds (if applicable) |
|------|--------|------|-------------------------------|
|      |        |      |                               |
|      |        |      |                               |

3.      Produce Documents sufficient to provide contact information (mailing address, phone number and e-mail address) for each investor, depositor, client and/or creditor responsive to Request #2. In lieu of producing documents, you may provide this information in the following format:

| Name | Mailing Address | Phone Number | E-Mail Address |
|------|-----------------|--------------|----------------|
|      |                 |              |                |
|      |                 |              |                |

4.   Produce Documents sufficient to identify the use of the funds responsive to Request #2 (*i.e.*, the use of the amounts loaned, invested and/or deposited with each entity). In lieu of producing documents, you may provide this information in the following format. Note: if you choose to provide information in the following table format, it is not sufficient to simply state that funds were used "to conduct the business of American Bondholders Foundation, LLC" or "to promote/secure payment on Chinese bonds" or similar general statement. Rather, you must describe or explain the use of funds – for example, "Salary," "Travel," "Legal Fees," etc.

**American Bondholders Foundation, LLC**

| Date | Amount | How Funds Were Used | Recipient of Funds |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |

**ABF Advisory, LLC**

| Date | Amount | How Funds Were Used | Recipient of Funds |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |

**ABF Charities**

| Date | Amount | How Funds Were Used | Recipient of Funds |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |

**ABF-West Opex**

| Date | Amount | How Funds Were Used | Recipient of Funds |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |

**[Repeat for Additional Entities Responsive to Request #2]**

| Date | Amount | How Funds Were Used | Recipient of Funds |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |

5. For each Chinese Bond within the possession, custody or control of:

      a. American Bondholders Foundation, LLC;

      b. ABF Advisory, LLC;

      c. ABF Charities;

      d. ABF-West Opex;

      e. Jonna Bianco; and/or

      f. Any other entity identified in response to Request #1

Produce Documents sufficient to establish the existence and location of each bond.

6. Produce Documents sufficient to identify all bank and brokerage accounts used by the following persons or entities at any point since January 1, 2013:

      a. American Bondholders Foundation, LLC;

      b. ABF Advisory, LLC;

      c. ABF Charities;

      d. ABF-West Opex;

      e. Jonna Bianco; and/or

      f. Any other entity identified in response to Request #1.

In lieu of producing documents, you may provide this information in the following format:

| Bank Name | Account Number | Name of Account Holder |
|---|---|---|
|  |  |  |
|  |  |  |

7. For each bank account and brokerage account responsive to Request #6, produce all account statements (including, but not limited to, any monthly, quarterly, and annual account statements) for the time period of January 1, 2013 to the present.

8.    For the time period of January 1, 2013 to the present, produce Documents sufficient to identify all commissions, finder's fees or other compensation <u>paid to</u> any of the following persons or entities:

    a.  American Bondholders Foundation, LLC;

    b.  ABF Advisory, LLC;

    c.  ABF Charities;

    d.  ABF-West Opex;

    e.  Jonna Bianco; and/or

    f.  Any other entity identified in response to Request #1.

9.    For the time period of January 1, 2013 to the present, produce Documents sufficient to identify all commissions, finder's fees or other compensation <u>paid by</u> any of the following persons or entities:

    a.  American Bondholders Foundation, LLC;

    b.  ABF Advisory, LLC;

    c.  ABF Charities;

    d.  ABF-West Opex;

    e.  Jonna Bianco; and/or

    f.  Any other entity identified in response to Request #1.

10.     For the time period of January 1, 2013 to the present, produce all tax returns, Forms W-2, Forms 1099, audited or unaudited financial statements, and Quickbooks or other accounting records for each of the following:

       a.  American Bondholders Foundation, LLC;

       b.  ABF Advisory, LLC;

       c.  ABF Charities;

       d.  ABF-West Opex;

       e.  Jonna Bianco; and/or

       f.  Any other entity identified in response to Request #1.

11.     Produce all Communications (including, but not limited to, e-mails) with any investor, depositor, client and/or creditor responsive to Request #2.

12.     Produce all Documents sent to or received from any investor, depositor, client and/or creditor responsive to Request #2. This request includes, but is not limited to, Account Statements, Marketing Materials, Escrow Agreements, Power of Attorney Agreements, Private Placement Memoranda, Non-Disclosure Agreements, Confidentiality Agreements, Bondholder Agreements, Bond Purchase Agreements, Investor Questionnaires, Answers to Investor Questionnaires, Investor Updates, etc.

13.     Produce all Communications (including, but not limited to, e-mails) with any Representative of the People's Republic of China.

14.     Produce all Documents sent to or received from any Representative of the People's Republic of China. This request includes, but is not limited to, any Agreements, memoranda of understanding or similar documents related to Chinese Bonds.

15.     Produce all Communications (including, but not limited to, e-mails) with Representatives of the country of Greece. This request includes, but is not limited to, all Communications with Representatives of the Central Bank of Greece.

16.    Produce all Documents sent to or received from Representatives of the country of Greece (including, but not limited to, Representatives of the Central Bank of Greece). This request includes, but is not limited to, any Agreement, memoranda of understanding or similar documents related to Chinese Bonds.

17.    Produce all Communications (including, but not limited to, e-mails) with any Representative of the United States of America related to Chinese Bonds.

18.    Produce all Documents sent to or received from any Representative of the United States of America related to Chinese Bonds.

19.    For tax years 2013 to the present, provide all forms you filed with the United States Internal Revenue Service, including, but not limited to, IRS Tax Form 1040s (including all schedules and attachments thereto).

**DECLARATION OF JONNA BIANCO CERTIFYING RECORDS
OF REGULARLY CONDUCTED BUSINESS ACTIVITY**

I, the undersigned, Jonna Bianco, pursuant to 28 U.S.C. § 1746, declare that:

1. I am _____ [*Insert Title*] of American Bondholders
   Foundation, LLC and I have personal knowledge of the company's recordkeeping
   practices. In light of that knowledge and my position with the company, I am authorized
   and qualified to make this declaration.

2. I further certify that the documents submitted herewith are true copies of records that
   were:

   (a) made at or near the time of the occurrence of the matters set forth therein, by,
   or from information transmitted by, a person with knowledge of those matters;

   (b) kept in the course of regularly conducted business activity; and

   (c) made by the regularly conducted business activity as a regular practice.

   I declare under penalty of perjury that the foregoing is true and correct. Executed on
   _____[*Insert Date*].


_____
Jonna Bianco



**U.S. Securities and Exchange Commission**

**<u>Data Delivery Standards</u>**

This document describes the technical requirements for paper and electronic document productions to the U.S. Securities and Exchange Commission (SEC).   **_<u>Any questions or proposed file formats other than those described below must be discussed with the legal and technical staff of the SEC Division of Enforcement prior to submission.</u>_**

General Instructions ............................................................................................................................1

Delivery Formats .............................................................................................................................. 2

   I.   *Concordance*® Imaged Productions........................................................................................2

      1.  Images ............................................................................................................................2

      2.  *Concordance Image*®  or Opticon Cross-Reference File .............................................2

      3.  *Concordance*® Data File ............................................................................................3

      4.  Text ................................................................................................................................3

      5.  Linked Native Files .......................................................................................................3

   II.   Native File Productions without Load Files ............................................................................3

   III.  Adobe PDF File Productions  ................................................................................................3

   IV.  Audio Files .............................................................................................................................4

   V.  Video Files  .............................................................................................................................4

   VI.  Electronic Trade and Bank Records ......................................................................................4

   VII. Electronic Phone Records  ....................................................................................................4

   VIII. Audit Workpapers..................................................................................................................4

**General Instructions**

Electronic files must be produced in their native format, i.e. the format in which they are ordinarily used and maintained during the normal course of business.  For example, an MS Excel file must be produced as an MS Excel file rather than an image of a spreadsheet. *(Note:  An Adobe PDF file is <u>not</u> considered a native file unless the document was initially created as a PDF.)*

In the event produced files require the use of proprietary software not commonly found in the workplace, the SEC will explore other format options with the producing party.

The proposed use of file de-duplication methodologies or *computer-assisted review* or *technology-assisted review* (TAR) during the processing of documents must be discussed with and approved by the legal and technical staff of the Division of Enforcement (ENF).  If your production will be de-duplicated it is vital that you 1) preserve any unique metadata associated with the duplicate files, for example, custodian name, and, 2) make that unique metadata part of your production to the SEC.

General requirements for **ALL** document productions are:

1. A cover letter should be included with each production and include the following:
    a. A list of each piece of media included in the production with its unique production volume number
    b. A list of custodians, identifying the Bates range for each custodian.
    c. The time zone in which the emails were standardized during conversion.
2. Data can be produced on CD, DVD, thumb drive, etc., using the media requiring the least number of deliverables and labeled with the following:
    a. Case number
    b. Production date
    c. Producing party
    d. Bates range
3. All submissions must be organized by **custodian** unless otherwise instructed.
4. All document family groups, i.e. email attachments, embedded files, etc., should be produced together and children files should follow parent files sequentially in the Bates numbering.
5. All load-ready collections should include only one data load file and one image pointer file.
6. All load-ready text must be produced as separate text files.
7. All load-ready collections should account for custodians in the custodian field.
8. Audio files should be separated from data files if both are included in the production.
9. Only alphanumeric characters and the underscore character are permitted in file names and folder names. Special characters are not permitted.
10. All electronic productions submitted on media must be produced using industry standard self-extracting encryption software.
11. Electronic productions may be submitted via Secure File Transfer. The SEC **cannot** accept productions made using file sharing sites.
12. Productions containing BSA or SARs material must be delivered on encrypted physical media. The SEC **cannot** accept electronic transmission of BSA or SARs material. Any BSA or SARs material produced should be segregated and appropriately marked as BSA or SARs material, or should be produced separately from other case related material.
13. Passwords for electronic documents, files, compressed archives and encrypted media must be provided separately either via email or in a separate cover letter from the media.
14. All electronic productions should be produced free of computer viruses.
15. Additional technical descriptions can be found in the addendum to this document.

   *Please note that productions sent to the SEC via United States Postal Service are subject to Mail Irradiation, and as a result electronic productions may be damaged.*

**Delivery Formats**

I. *Concordance® Imaged* **Productions**
   The SEC prefers that all documents and data be produced in a structured format prepared for Concordance. All scanned paper and electronic file collections should be converted to TIFF files, Bates numbered, and include fully searchable text files.

   1. **Images**
      a. Black and white images must be 300 DPI Group IV single-page TIFF files.
      b. Color images must be produced in JPEG format.
      c. File names cannot contain embedded spaces or special characters (including the comma).
      d. Folder names cannot contain embedded spaces or special characters (including the comma).
      e. All TIFF image files must have a unique file name, i.e. Bates number.
      f. Images must be endorsed with sequential Bates numbers in the lower right corner of each image.
      g. The number of TIFF files per folder should not exceed 500 files.
      h. Excel spreadsheets should have a placeholder image named by the Bates number of the file.

     i.    AUTOCAD/photograph files should be produced as a single page JPEG file.

**2.** *Concordance Image®* **OR Opticon  Cross-Reference File**
The image cross-reference file (.LOG or .OPT) links the images to the database records. It should be a comma-delimited file consisting of seven fields per line with a line in the cross-reference file for every image in the database with the following format:

    *ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount*

**3.** *Concordance®* **Data File**
The data file (.DAT) contains all of the fielded information that will be loaded into the *Concordance®* database.

  a.   The first line of the .DAT file must be a header row identifying the field names.
  b.   The .DAT file must use the following *Concordance®* default delimiters:
      Comma ¶ ASCII character (020)
      Quote þ ASCII character (254)
  c.   Date fields should be provided in the format: mm/dd/yyyy
  d.   Date and time fields must be two separate fields.
  e.   If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments.
  f.   An OCRPATH field must be included to provide the file path and name of the extracted text file on the produced storage media.  The text file must be named after the FIRSTBATES.  Do not include the text in the .DAT file.
  g.   For productions with native files, a LINK field must be included to provide the file path and name of the native file on the produced storage media. The native file must be named after the FIRSTBATES.
  h.   BEGATTACH and ENDATTACH fields must be two separate fields.
  i.   A complete list of metadata fields is available in **Addendum A** to this document.

**4.** **Text**
Text must be produced as separate text files, not as fields within the .DAT file. The full path to the text file (OCRPATH) should be included in the .DAT file.  We require document level ANSI text files, named per the FIRSTBATES/Image Key. Please note in the cover letter if any non-ANSI text files are included in the production. Extracted text files must be in a separate folder, and the number of text files per folder should not exceed 1,000 files. There should be no special characters (including commas in the folder names). For redacted documents, provide the full text for the redacted version.

**5.** **Linked Native Files**
Copies of original email and native file documents/attachments must be included for all electronic productions.
  a.   Native file documents must be named per the FIRSTBATES number.
  b.   The full path of the native file must be provided in the .DAT file for the LINK field.
  c.   The number of native files per folder should not exceed 1,000 files.

**II.**   **Native File Production without Load Files**
With prior approval, native files may be produced without load files. The native files must be produced as they are maintained in the normal course of business and organized by custodian-named file folders. When approved, Outlook (.PST) and Lotus Notes (.NSF) email files may be produced in native file format.  A separate folder should be provided for each custodian.

**III.**   **Adobe PDF File Production**
With prior approval, Adobe PDF files may be produced in native file format.
  1.   PDF files should be produced in separate folders named by the custodian. The folders should not contain any special characters (including commas).
  2.   All PDFs must be unitized at the document level, i.e., each PDF must represent a discrete document.
  3.   All PDF files must contain embedded text that includes all discernible words within the document, not selected text or image only. This requires all layers of the PDF to be flattened first.
  4.   If PDF files are Bates endorsed, the PDF files must be named by the Bates range.

## IV. Audio Files

Audio files from telephone recording systems must be produced in a format that is playable using Microsoft Windows Media Player™. Additionally, the call information (metadata) related to each audio recording MUST be provided. The metadata file must be produced in a delimited text format. Field names must be included in the first row of the text file. The metadata must include, at a minimum, the following fields:

| | | |
|---|---|---|
| 1) | Caller Name: | Caller's name or account/identification number |
| 2) | Originating Number: | Caller's phone number |
| 3) | Called Party Name: | Called party's name |
| 4) | Terminating Number: | Called party's phone number |
| 5) | Date: | Date of call |
| 6) | Time: | Time of call |
| 7) | Filename: | Filename of audio file |

## V. Video Files

Video files must be produced in a format that is playable using Microsoft Windows Media Player™.

## VI. Electronic Trade and Bank Records

When producing electronic trade and bank records, provide the files in one of the following formats:

1.  MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

2.  Delimited text file with header information detailing the field structure. The preferred delimiter is a vertical bar "|". If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

## VII. Electronic Phone Records

When producing electronic phone records, provide the files in the following format:

1.  MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details. Data must be formatted in its native format (i.e. dates in a date format, numbers in an appropriate numerical format, and numbers with leading zeroes as text).
    a.  The metadata that must be included is outlined in **Addendum B** of this document. Each field of data must be loaded into a separate column. For example, Date and Start_Time must be produced in separate columns and not combined into a single column containing both pieces of information. Any fields of data that are provided in addition to those listed in **Addendum B** must also be loaded into separate columns.

## VIII. Audit Workpapers

The SEC prefers for workpapers to be produced in two formats: (1) With Bates numbers in accordance with the SEC Data Delivery Standards; and (2) in native format or if proprietary software was used, on a standalone laptop with the appropriate software loaded so that the workpapers may be reviewed as they would have been maintained in the ordinary course of business. When possible, the laptop should be configured to enable a Virtual Machine (VM) environment.

## ADDENDUM A

The metadata of electronic document collections should be extracted and provided in a .DAT file using the field definition and formatting described below:

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email<br>**The LASTBATES field should be populated for single page documents/emails. |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| PARENT_BATES | EDC0000001 | First Bates number of parent document/Email<br>**This PARENT_BATES field should be populated in each record representing an attachment "child" document |
| CHILD_BATES | EDC0000002; EDC0000014 | First Bates number of "child" attachment(s); can be more than one Bates number listed depending on the number of attachments<br>**The CHILD_BATES field should be populated in each record representing a "parent" document |
| CUSTODIAN | Smith, John | Email: Mailbox where the email resided<br>Native: Name of the individual or department from whose files the document originated |
| FROM | John Smith | Email: Sender<br>Native: Author(s) of document<br>**semi-colon should be used to separate multiple entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s)<br>**semi-colon should be used to separate multiple entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| BCC | John Cain | Blind carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email<br>Native: Title of document (if available) |
| FILE_NAME | BoardMeetingMinutes.docx | Native: Name of the original native file, including extension |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent<br>Native: (empty) |
| TIME_SENT/TIME_ZONE | 07:05 PM GMT | Email: Time the email was sent/ Time zone in which the emails were standardized during conversion.<br>Native: (empty)<br>**This data must be a separate field and cannot be combined with the DATE_SENT field |
| TIME_ZONE | GMT | The time zone in which the emails were standardized during conversion.<br>Email: Time zone<br>Native: (empty) |

5

| LINK | D:\001\ EDC0000001.msg | Hyperlink to the email or native file document<br>**The linked file must be named per the FIRSTBATES number |
|---|---|---|
| MIME_TYPE | MSG | The content type of an Email or native file document as identified/extracted from the header |
| FILE_EXTEN | MSG | The file type extension representing the Email or native file document; will vary depending on the email format |
| AUTHOR | John Smith | Email: (empty)<br>Native: Author of the document |
| DATE_CREATED | 10/10/2010 | Email: (empty)<br>Native: Date the document was created |
| TIME_CREATED | 10:25 AM | Email: (empty)<br>Native: Time the document was created<br>**This data must be a separate field and cannot be combined with the DATE_CREATED field |
| DATE_MOD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last modified |
| TIME_MOD | 07:00 PM | Email: (empty)<br>Native: Time the document was last modified<br>**This data must be a separate field and cannot be combined with the DATE_MOD field |
| DATE_ACCESSD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last accessed |
| TIME_ACCESSD | 07:00 PM | Email: (empty)<br>Native: Time the document was last accessed<br>**This data must be a separate field and cannot be combined with the DATE_ACCESSD field |
| PRINTED_DATE | 10/12/2010 | Email: (empty)<br>Native: Date the document was last printed |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty)<br>Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name.<br>Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$cb 8306d1@MSN> | Email: Unique Message ID<br>Native: (empty) |
| MD5HASH | d131dd02c5e6eec4693d9a069 8aff95c 2fcab58712467eab4004583eb 8fb7f89 | MD5 Hash value of the document. |
| OCRPATH | TEXT/001/EDC0000001.txt | Path to extracted text of the native file |

Sample Image Cross-Reference File:

```
IMG0000001,,E:\001\IMG0000001.TIF,Y,,,
IMG0000002,,E:\001\IMG0000002.TIF,,,,
IMG0000003,,E:\001\IMG0000003.TIF,,,,
IMG0000004,,E:\001\IMG0000004.TIF,Y,,,
IMG0000005,,E:\001\IMG0000005.TIF,Y,,,
IMG0000006,,E:\001\IMG0000006.TIF,,,,
```

Rev 07/2016

## ADDENDUM B

For Electronic Phone Records, include the following fields in separate columns:
For Calls:
1) Account Number
2) Connection Date – Date the call was received or made
3) Connection Time – Time call was received or made
4) Seizure Time – Time it took for the call to be placed in seconds
5) Originating Number – Phone that placed the call
6) Terminating Number – Phone that received the call
7) Elapsed Time – The length of time the call lasted, preferably in seconds
8) End Time – The time the call ended
9) Number Dialed – Actual number dialed
10) IMEI Originating – Unique id to phone used to make call
11) IMEI Terminating– Unique id to phone used to receive call
12) IMSI Originating – Unique id to phone used to make call
13) IMSI Terminating- Unique id to phone used to receive call
14) Call Codes – Identify call direction or other routing information
15) Time Zone – Time Zone in which the call was received or placed, if applicable


For Text messages:
1) Account Number
2) Connection Date – Date the text was received or made
3) Connection Time – Time text was received or made
4) Originating Number – Who placed the text
5) Terminating Number – Who received the text
6) IMEI Originating – Unique id to phone used to make text
7) IMEI Terminating– Unique id to phone used to receive text
8) IMSI Originating - Unique id to phone used to make text
9) IMSI Terminating- Unique id to phone used to receive text
10) Text Code – Identify text direction, or other text routing information
11) Text Type Code – Type of text message (sent SMS, MMS, or other)
12) Time Zone – Time Zone in which the call was received or placed, if applicable

For Mobile Data Usage:
1) Account Number
2) Connection Date – Date the data was received or made
3) Connection Time – Time data was received or made
4) Originating number – Number that used data
5) IMEI Originating – Unique id of phone that used data
6) IMSI Originating - Unique id of phone that used data
7) Data or Data codes – Identify data direction, or other data routing information
8) Time Zone – Time Zone in which the call was received or placed, if applicable

Rev 07/2016

# SECURITIES AND EXCHANGE COMMISSION
## Washington, D.C. 20549

## Supplemental Information for Persons Requested to Supply
## Information Voluntarily or Directed to Supply Information
## Pursuant to a Commission Subpoena

**A. False Statements and Documents**

Section 1001 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> [W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--
> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> (2) makes any materially false, fictitious, or fraudulent statement or representation; or
> (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry.

Section 1519 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . ., or in relation to or contemplation of any such matter.

**B. Testimony**

If your testimony is taken, you should be aware of the following:

1. *Record.* Your testimony will be transcribed by a reporter. If you desire to go off the record, please indicate this to the Commission employee taking your testimony, who will determine whether to grant your request. The reporter will not go off the record at your, or your counsel's, direction.

2. *Counsel.* You have the right to be accompanied, represented and advised by counsel of your choice. Your counsel may advise you before, during and after your testimony; question you briefly at the conclusion of your testimony to clarify any of the answers you give during testimony; and make summary notes during your testimony solely for your use. If you are accompanied by counsel, you may consult privately.

If you are not accompanied by counsel, please advise the Commission employee taking your testimony if, during the testimony, you desire to be accompanied, represented and advised by counsel. Your testimony will be adjourned once to afford you the opportunity to arrange to be so accompanied, represented or advised.

You may be represented by counsel who also represents other persons involved in the Commission's investigation. This multiple representation, however, presents a potential conflict of interest if one client's interests are or may be adverse to another's. If you are represented by counsel who also represents other persons involved in the investigation, the Commission will assume that you and counsel have discussed and resolved all issues concerning possible conflicts of interest. The choice of counsel, and the responsibility for that choice, is yours.

3. *Transcript Availability.* Rule 6 of the Commission's Rules Relating to Investigations, 17 CFR 203.6, states:

> A person who has submitted documentary evidence or testimony in a formal investigative proceeding shall be entitled, upon written request, to procure a copy of his documentary evidence or a transcript of his testimony on payment of the appropriate fees: *Provided, however,* That in a nonpublic formal investigative proceeding the Commission may for good cause deny such request. In any event, any witness, upon proper identification, shall have the right to inspect the official transcript of the witness' own testimony.

If you wish to purchase a copy of the transcript of your testimony, the reporter will provide you with a copy of the appropriate form. Persons requested to supply information voluntarily will be allowed the rights provided by this rule.

4. *Perjury.* Section 1621 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> Whoever--
>
> (1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

SEC 1662 (08-16)

> (2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true.

5.   *Fifth Amendment and Voluntary Testimony.* Information you give may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency.

You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you.

If your testimony is not pursuant to subpoena, your appearance to testify is voluntary, you need not answer any question, and you may leave whenever you wish. Your cooperation is, however, appreciated.

6.   *Formal Order Availability.* If the Commission has issued a formal order of investigation, it will be shown to you during your testimony, at your request. If you desire a copy of the formal order, please make your request in writing.

## C. Submissions and Settlements

Rule 5(c) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(c), states:

> Persons who become involved in . . . investigations may, on their own initiative, submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation. Upon request, the staff, in its discretion, may advise such persons of the general nature of the investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing and submitting a statement prior to the presentation of a staff recommendation to the Commission for the commencement of an administrative or injunction proceeding. Submissions by interested persons should be forwarded to the appropriate Division Director or Regional Director with a copy to the staff members conducting the investigation and should be clearly referenced to the specific investigation to which they relate. In the event a recommendation for the commencement of an enforcement proceeding is presented by the staff, any submissions by interested persons will be forwarded to the Commission in conjunction with the staff memorandum.

The staff of the Commission routinely seeks to introduce submissions made pursuant to Rule 5(c) as evidence in Commission enforcement proceedings, when the staff deems appropriate.

Rule 5(f) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(f), states:

> In the course of the Commission's investigations, civil lawsuits, and administrative proceedings, the staff, with appropriate authorization, may discuss with persons involved the disposition of such matters by consent, by settlement, or in some other manner. It is the policy of the Commission, however, that the disposition of any such matter may not, expressly or impliedly, extend to any criminal charges that have been, or may be, brought against any such person or any recommendation with respect thereto. Accordingly, any person involved in an enforcement matter before the Commission who consents, or agrees to consent, to any judgment or order does so solely for the purpose of resolving the claims against him in that investigative, civil, or administrative matter and not for the purpose of resolving any criminal charges that have been, or might be, brought against him. This policy reflects the fact that neither the Commission nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings. That authority and responsibility are vested in the Attorney General and representatives of the Department of Justice.

## D. Freedom of Information Act

The Freedom of Information Act, 5 U.S.C. 552 (the "FOIA"), generally provides for disclosure of information to the public. Rule 83 of the Commission's Rules on Information and Requests, 17 CFR 200.83, provides a procedure by which a person can make a written request that information submitted to the Commission not be disclosed under the FOIA. That rule states that no determination as to the validity of such a request will be made until a request for disclosure of the information under the FOIA is received. Accordingly, no response to a request that information not be disclosed under the FOIA is necessary or will be given until a request for disclosure under the FOIA is received. If you desire an acknowledgment of receipt of your written request that information not be disclosed under the FOIA, please provide a duplicate request, together with a stamped, self-addressed envelope.

## E. Authority for Solicitation of Information

*Persons Directed to Supply Information Pursuant to Subpoena.* The authority for requiring production of information is set forth in the subpoena. Disclosure of the information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.

*Persons Requested to Supply Information Voluntarily.* One or more of the following provisions authorizes the Commission to solicit the information requested: Sections 19 and/or 20 of the Securities Act of 1933; Section 21 of the Securities Exchange Act of 1934; Section 321 of the Trust Indenture Act of 1939; Section 42 of the Investment Company Act of 1940; Section 209 of the Investment Advisers Act of 1940; and 17 CFR 202.5. Disclosure of the requested information to the Commission is voluntary on your part.

### F. Effect of Not Supplying Information

*Persons Directed to Supply Information Pursuant to Subpoena.* If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so. If such an order is obtained and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt of court. In addition, Section 21(c) of the Securities Exchange Act of 1934, Section 42(c) of the Investment Company Act of 1940, and Section 209(c) of the Investment Advisers Act of 1940 provide that fines and terms of imprisonment may be imposed upon any person who shall, without just cause, fail or refuse to attend and testify or to answer any lawful inquiry, or to produce books, papers, correspondence, memoranda, and other records in compliance with the subpoena.

*Persons Requested to Supply Information Voluntarily.* There are no direct sanctions and thus no direct effects for failing to provide all or any part of the requested information.

### G. Principal Uses of Information

The Commission's principal purpose in soliciting the information is to gather facts in order to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws or rules for which the Commission has enforcement authority, such as rules of securities exchanges and the rules of the Municipal Securities Rulemaking Board. Facts developed may, however, constitute violations of other laws or rules. Information provided may be used in Commission and other agency enforcement proceedings. Unless the Commission or its staff explicitly agrees to the contrary in writing, you should not assume that the Commission or its staff acquiesces in, accedes to, or concurs or agrees with, any position, condition, request, reservation of right, understanding, or any other statement that purports, or may be deemed, to be or to reflect a limitation upon the Commission's receipt, use, disposition, transfer, or retention, in accordance with applicable law, of information provided.

### H. Routine Uses of Information

The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other governmental agencies.

Set forth below is a list of the routine uses which may be made of the information furnished.

1. To appropriate agencies, entities, and persons when (a) it is suspected or confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the SEC has determined that, as a result of the suspected or confirmed compromise, there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the SEC or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the SEC's efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

2. To other federal, state, local, or foreign law enforcement agencies; securities self-regulatory organizations; and foreign financial regulatory authorities to assist in or coordinate regulatory or law enforcement activities with the SEC.

3. To national securities exchanges and national securities associations that are registered with the SEC, the Municipal Securities Rulemaking Board; the Securities Investor Protection Corporation; the Public Company Accounting Oversight Board; the federal banking authorities, including, but not limited to, the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, and the Federal Deposit Insurance Corporation; state securities regulatory agencies or organizations; or regulatory authorities of a foreign government in connection with their regulatory or enforcement responsibilities.

4. By SEC personnel for purposes of investigating possible violations of, or to conduct investigations authorized by, the federal securities laws.

5. In any proceeding where the federal securities laws are in issue or in which the Commission, or past or present members of its staff, is a party or otherwise involved in an official capacity.

6. In connection with proceedings by the Commission pursuant to Rule 102(e) of its Rules of Practice, 17 CFR 201.102(e).

7. To a bar association, state accountancy board, or other federal, state, local, or foreign licensing or oversight authority; or professional association or self-regulatory authority to the extent that it performs similar functions (including the Public Company Accounting Oversight Board) for investigations or possible disciplinary action.

8. To a federal, state, local, tribal, foreign, or international agency, if necessary to obtain information relevant to the SEC's decision concerning the hiring or retention of an employee; the issuance of a security clearance; the letting of a contract; or the issuance of a license, grant, or other benefit.

9. To a federal, state, local, tribal, foreign, or international agency in response to its request for information concerning the hiring or retention of an employee; the issuance of a security clearance; the reporting of an investigation of an

3

employee; the letting of a contract; or the issuance of a license, grant, or other benefit by the requesting agency, to the extent that the information is relevant and necessary to the requesting agency's decision on the matter.

10.  To produce summary descriptive statistics and analytical studies, as a data source for management information, in support of the function for which the records are collected and maintained or for related personnel management functions or manpower studies; may also be used to respond to general requests for statistical information (without personal identification of individuals) under the Freedom of Information Act.

11.  To any trustee, receiver, master, special counsel, or other individual or entity that is appointed by a court of competent jurisdiction, or as a result of an agreement between the parties in connection with litigation or administrative proceedings involving allegations of violations of the federal securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)) or pursuant to the Commission's Rules of Practice, 17 CFR 201.100 – 900 or the Commission's Rules of Fair Fund and Disgorgement Plans, 17 CFR 201.1100-1106, or otherwise, where such trustee, receiver, master, special counsel, or other individual or entity is specifically designated to perform particular functions with respect to, or as a result of, the pending action or proceeding or in connection with the administration and enforcement by the Commission of the federal securities laws or the Commission's Rules of Practice or the Rules of Fair Fund and Disgorgement Plans.

12.  To any persons during the course of any inquiry, examination, or investigation conducted by the SEC's staff, or in connection with civil litigation, if the staff has reason to believe that the person to whom the record is disclosed may have further information about the matters related therein, and those matters appeared to be relevant at the time to the subject matter of the inquiry.

13.  To interns, grantees, experts, contractors, and others who have been engaged by the Commission to assist in the performance of a service related to this system of records and who need access to the records for the purpose of assisting the Commission in the efficient administration of its programs, including by performing clerical, stenographic, or data analysis functions, or by reproduction of records by electronic or other means. Recipients of these records shall be required to comply with the requirements of the Privacy Act of 1974, as amended, 5 U.S.C. 552a.

14.  In reports published by the Commission pursuant to authority granted in the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), which authority shall include, but not be limited to, section 21(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78u(a)).

15.  To members of advisory committees that are created by the Commission or by Congress to render advice and recommendations to the Commission or to Congress, to be used solely in connection with their official designated functions.

16.  To any person who is or has agreed to be subject to the Commission's Rules of Conduct, 17 CFR 200.735-1 to 200.735-18, and who assists in the investigation by the Commission of possible violations of the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), in the preparation or conduct of enforcement actions brought by the Commission for such violations, or otherwise in connection with the Commission's enforcement or regulatory functions under the federal securities laws.

17.  To a Congressional office from the record of an individual in response to an inquiry from the Congressional office made at the request of that individual.

18.  To members of Congress, the press, and the public in response to inquiries relating to particular Registrants and their activities, and other matters under the Commission's jurisdiction.

19.  To prepare and publish information relating to violations of the federal securities laws as provided in 15 U.S.C. 78c(a)(47)), as amended.

20.  To respond to subpoenas in any litigation or other proceeding.

21.  To a trustee in bankruptcy.

22.  To any governmental agency, governmental or private collection agent, consumer reporting agency or commercial reporting agency, governmental or private employer of a debtor, or any other person, for collection, including collection by administrative offset, federal salary offset, tax refund offset, or administrative wage garnishment, of amounts owed as a result of Commission civil or administrative proceedings.

\* \* \* \* \*

*Small Business Owners*: The SEC always welcomes comments on how it can better assist small businesses. If you would like more information, or have questions or comments about federal securities regulations as they affect small businesses, please contact the Office of Small Business Policy, in the SEC's Division of Corporation Finance, at 202-551-3460. If you would prefer to comment to someone outside of the SEC, you can contact the Small Business Regulatory Enforcement Ombudsman at http://www.sba.gov/ombudsman or toll free at 888-REG-FAIR. The Ombudsman's office receives comments from small businesses and annually evaluates federal agency enforcement activities for their responsiveness to the special needs of small business.